PEOPLE *v.* SMITH.[1]

1. CRIMINAL LAW—FORGED RAILROAD TICKET—INFORMATION—INTENT—SUFFICIENT ALLEGATION.

Under 3 Comp. Laws 1897, §§ 11630, 11631, declaring it a crime to falsely make, forge, counterfeit, or alter any railroad passenger ticket with intent to injure or defraud, or to sell or offer to sell, or have in possession with intent to sell, any such false, forged, altered, or counterfeit ticket, knowing the same

_____

[1] Rehearing denied February 27, 1901.

to be false, forged, altered, or counterfeit, an information which charges respondent with having in his possession a certain false, forged, and counterfeit ticket, with intent to injure and defraud, is sufficient, without the specific allegation that the ticket was falsified, forged, or counterfeited with intent to injure or defraud.

2. Same—Pleading and Proof—Variance.

Where, in a prosecution under 3 Comp. Laws 1897, § 11631, declaring it a crime to sell or offer for sale any false, forged, altered, or counterfeit railroad ticket, knowing it to be such, the proof showed that respondent's clerk, under his instruction, imitated the dating stamp on the back of the return portion of a ticket, and signed thereon the name of the depot ticket agent, of the railroad company authorized to stamp and issue the same, as stipulated therein, which respondent sold as genuine, it was not error to refuse to strike out the testimony on the ground of a variance, in that the information charged the sale of a forged ticket, while the proofs showed the sale of an altered or changed ticket.

3. Same—Necessary Averments.

It was not necessary, in a prosecution under 3 Comp. Laws 1897, § 11631, that the information, which charged the possession and sale, with intent to defraud, of a forged ticket purporting to be issued by a certain railroad company, should allege that the return coupon was good for passage only when stamped and signed by the agent of another company, in order to render admissible the proof of the forgery, consisting in the imitation of such stamp and signature by respondent, who knew that the ticket was good only when so stamped and signed.

4. Same—Defenses.

Where respondent in a prosecution under 3 Comp. Laws 1897, § 11631, for having in his possession a false, forged, and counterfeit railroad ticket with intent to injure and defraud, had come into possession of a return ticket required to be stamped and signed by a certain railroad company, the dating stamp of which his clerk imitated, and signed the name of the depot ticket agent of such company thereto, and which respondent sold as genuine, the contention that it was not forged because nothing was charged by the company for signing and stamping tickets for return passage, and therefore the railroad company could not be defrauded by an imitation of such stamp and signature, cannot be sustained.

Exceptions before judgment from recorder's court of Detroit; Phelan, J. Submitted December 4, 1900. Decided January 29, 1901.

Howard D. Smith was convicted of having in his possession a forged railroad passenger ticket, with intent to defraud. Affirmed.

*Arthur D. Prosser*, for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Bingley R. Fales*, Assistant Prosecuting Attorney, for the people.

LONG, J. Respondent was informed against in the recorder's court of the city of Detroit for having in his possession a certain false, forged, and counterfeit railroad passenger ticket, with intent then and there to injure and defraud. The case was tried before a jury, and the respondent convicted. He assigns error.

It appears that on September 16, 1899, the Cincinnati, Hamilton & Dayton Railroad Company sold at its Cincinnati office a round-trip ticket to Detroit and return on account of an Odd Fellows convention then being held in Detroit. The ticket appears to have been sold to one J. Van, and is what is usually called a signature ticket. Afterwards, and before September 19th, the ticket came to respondent on a rebate from a Cincinnati ticket broker. It was sold at special excursion rates, under certain conditions which appear upon the face of it; among others, being nontransferable. It was good for return passage only after being properly stamped and signed by the purchaser at the Detroit end of the line. The respondent was engaged in Detroit in the business of a ticket scalper. When received by him it was not stamped or signed for return passage, as stipulated in the conditions thereon. Respondent had in his employ a clerk by the name of Boyd, who, under respondent's instruction and direction, imitated, by the use of coins of different sizes and a blue pencil, the Michigan Central Railroad Company's dating

stamp on the back of the ticket, and also signed thereon the name of G. W. F. Chamberlin, the depot ticket agent of the Michigan Central Railroad Company, which was the agency properly authorized to stamp and issue the return portion of said ticket. Respondent then sold it as so prepared by Boyd to one Mrs. Reed for the sum of $6, the regular rare from Detroit to Cincinnati being $7.30.

The conviction was had under section 11631, 3 Comp. Laws 1897, which reads:

"Every person who shall sell or offer to sell, or who shall have in his possession with intent to sell, any such false, forged, altered, or counterfeit railroad passenger ticket mentioned in the preceding section, knowing the same to be false, forged, altered, or counterfeit, shall be punished," etc.

The preceding section referred to reads:

"Every person who shall falsely make, forge, or counterfeit any railroad passenger ticket purporting to be made or issued by any railroad company or companies doing business within or without this State, with intent to injure or defraud, or who shall, with like intent, alter any railroad passenger ticket made or issued by any such railroad company or companies, shall be punished. * * * Any change of any such ticket made or issued by any railroad company or companies, if made with intent to injure or defraud, whether made by writing, printing, stamping, punching, obliteration, or otherwise, shall be deemed an alteration within the meaning of this section."

It appears from the testimony of the people that respondent had been in the cut-rate ticket business for some 18 years, and for some time, at least, had carried on his business in defiance of the rights of the railroad companies. He told Boyd, who was called as a witness for the people, as appears by Boyd's testimony, that it was the practice of his office, when he could not get a ticket properly stamped, dated, and signed by the railroad agents, to do it himself.

The first assignment of error is that the information charges no offense under the statute, as it does not allege

that the ticket was falsified, forged, or counterfeited by some person with intent to injure or defraud; that there is no allegation of intent to injure or defraud in connection with the alleged forgery of the ticket. The information, we think, cannot have the construction contended for. It alleges that the respondent had in his possession a certain false, forged, and counterfeit ticket, with intent to injure and defraud. This was a strict compliance with section 11631 of the statute above quoted. *Haskins* v. *Ralston*, 69 Mich. 63, 67 (37 N. W. 45, 13 Am. St. Rep. 376).

The second assignment of error is based upon the refusal of the court to strike out the testimony given by the people because of a claimed fatal variance between the proofs and the allegations in the information, in that the information charges the sale of a forged ticket purporting to have been issued by the Cincinnati, Hamilton & Dayton Company, while the proofs show the sale of an altered or changed ticket made and issued by the same company. These objections have no force. The proofs show that the respondent himself caused the ticket to be forged after it came into his possession, and then sold it as genuine.

It is also urged as ground of error that the information does not allege the necessity of taking the ticket to the Michigan Central Railroad Company for signing and stamping for return passage, and that such requirement does not appear on the face of the ticket. The information does charge that the ticket was false, forged, and counterfeit, and that respondent knowingly, willfully, and feloniously had it in his possession with intent to injure and defraud. From his acquaintance with railroad business he knew that the ticket would not be good for return passage without stamping and signing by the Michigan Central Railroad Company. He knew that was the custom on such return tickets; that the Cincinnati, Hamilton & Dayton road took its trains over the Michigan Central Railroad to get into the city of Detroit. He himself caused the ticket to be stamped and signed to make it a good ticket over that road.

It is also claimed that the ticket was not forged. The argument is that nothing whatever was charged for signing and stamping it for return passage; that, therefore, it follows that it was impossible to defraud the railroad company by signing and stamping it, no matter who did it. We think this contention cannot be sustained. It was a reasonable regulation made by the railroad company that these tickets were not transferable, and were good only by having them stamped and signed by the railroad officials in Detroit. Respondent knew this, and yet willfully and deliberately caused a counterfeit stamp to be placed thereon, and caused the name of the Michigan Central Railroad Company's agent to be signed thereto. It was not good for return passage until that should be done by the Michigan Central Company's agent, and, when done, was good only in the hands of the purchaser. From his long experience in the business, the respondent knew this, and yet caused the same to be fraudulently and feloniously counterfeited.

We think there are no other assignments of error which need discussion.

The conviction must be affirmed.

The other Justices concurred.